United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOHAMMED SHER ISLAM,<br><br>    Plaintiff,<br>  v.<br><br>F. GERARD HEINAUER, Director, United States Citizenship and Immigration Services Nebraska Service Center, et al.,<br><br>    Defendants.<br>_____/ | No. C 13-02316 RS<br><br>**ORDER DENYING MOTION TO DISMISS, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In this immigration mandamus action, plaintiff Mohammed Sher Islam seeks an order compelling the government to adjudicate his Form I-485 Application for adjustment of citizenship status. The government moves to dismiss, and both parties move for summary judgment. For the reasons set forth below, both of defendants' motions are denied. Further, because Islam has endured an unreasonable delay in the processing of his I-485 petition, his motion for summary judgment is granted. The government must process Islam's application forthwith.

## II. BACKGROUND

Plaintiff Mohammad Sher Islam is a native and citizen of Pakistan who entered the United States in April of 2000. (Compl., ECF No. 1 at ¶ 6; Decl. of Gareth R. Canaan, ECF No. 13-1 at ¶ 3). Islam applied for asylum on January 29, 2001 with the Immigration and Naturalization Service (INS). An Immigration Judge granted his application on March 27, 2007. *Id.* On or about May 27, 2008, Islam filed a Form I-485 Application with the U.S. Citizenship and Immigration Services (USCIS) to adjust his immigration status to that of a lawful permanent resident. (Compl. at ¶ 6; Canaan Decl. at ¶ 5). That application is still pending. *Id.*

When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks. (Canaan Decl. at ¶ 7). These procedures are not, however, causing any delay in adjudication of Islam's Form I-485. Rather, defendants maintain that because Islam's application would be denied if adjudication went forward, his petition has been placed on hold to determine whether he might benefit from certain discretionary exemptions. *Id.* at ¶¶ 21, 30. Defendants claim Islam is not admissible to the United States under provisions of the Immigration & Nationality Act (INA), because, among other things, he admitted to having been a member of Muhajir Qaumiwa Movement – Altaf Faction (MQM–A), a "Tier III" terrorist organization. *See* 8 U.S.C. 1182(a)(3)(B)(vi)(III); (Canaan Decl. at ¶¶ 12– 17).[1]

On December 26, 2007, the Consolidated Appropriations Act, 2008 (CAA) expanded the discretionary authority of the Secretary of the Department of Homeland Security (DHS) "to exempt certain terrorist-related inadmissibility grounds as they relate to individual aliens," and to exempt certain Tier III terrorist organizations from being considered terrorist organizations. (Canaan Decl. at ¶ 18). On March 26, 2008, the USCIS issued a memorandum instructing adjudicators to withhold adjudication of cases that could benefit from the Secretary's expanded authority under the CAA. *Id.* at 20. Pursuant to this policy, Islam's application was placed on hold to determine if he might qualify for an exemption, notwithstanding his associations with MQM–A. *Id.* at 21.

---

[1] The INA sets out three categories of terrorist organizations. "Tier I" terrorist organizations are those designated as such under 8 U.S.C. § 1189. "Tier II" terrorist organizations are those designated as such by the Secretary of State and the Attorney General or the Secretary of Homeland Security under 8 U.S.C. § 1182(a)(3)(B)(vi). Finally, a "Tier III" terrorist organization "is a group of two or more individuals whether organized or not, which engages in, or has a subgroup which engages in [terrorist activities.]" 8 U.S.C. § 1182(a)(3)(B)(vi).

On September 17, 2010, Islam filed a complaint in this district, assigned to a different judge, challenging the delay in his adjudication. *Islam v. Heinauer*, C 10-04222 JSW, 2011 WL 2066661, at *2 (N.D. Cal. May 25, 2011) ("*Islam I*"). Islam alleged violations of the Administrative Procedure Act (APA) based on the unreasonable delay in processing his Form I–485 and sought a writ of mandamus requiring adjudication. *Id.* The court granted defendant's motion for summary judgment, stating, "Although the Court can foresee a point at which the delay in ruling on Islam's I–485 Application would be unreasonable, based on the existing record, that time has not yet come." *Id.* at *8.

Nearly two years later, with his I–485 Application still pending, Islam filed this action on May 21, 2013. Islam once again asserts two claims for relief and seeks to compel adjudication.[2] Defendants now move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, they move for summary judgment on the basis that the delay in processing Islam's I–485 Application is not unreasonable. Islam opposes the motion to dismiss and cross-moves for summary judgment on the basis that Defendants' delay in processing his I–485 Application is unreasonable as a matter of law.

### III.   LEGAL STANDARD

#### A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the plaintiff's claims. A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). A complaint may also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion may be based on either the lack of a cognizable legal theory or the absence of

---

[2] Plaintiff's first claim for relief pursuant to the Mandamus Act, 28 U.S.C. § 1361, seeks the same outcome as his second claim under the APA. *See Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (claim seeking mandamus is essentially the same as claim for relief under § 706 of the APA). This order will address the APA claim only, as the outcome is determinative of both of Islam's claims. *See Quereshi*, 2012 WL 2503828 at *3, n. 3.

3

sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the factual allegations must suffice to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 557, 570. While the factual allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555. Accordingly, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

B. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255. The Ninth circuit has long recognized "that summary judgment is singularly inappropriate where credibility is at issue." *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054-55 (9th Cir. 2008) (quoting *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir.1978)).

## IV. DISCUSSION

### A. The Government's Motion to Dismiss

#### i. *Subject Matter Jurisdiction*

First, invoking Federal Rule of Civil Procedure 12(b)(1), defendants contend the court lacks subject matter jurisdiction to review Islam's complaint. In particular, the government argues that the REAL ID Act, 8 U.S.C. § 1252(a)(2)(B)(ii), precludes judicial review of immigration-related decisions or actions that are committed to agency discretion. The statute provides:

> [N]o court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B).[3] Here, Islam seeks a writ of mandamus to compel the government to adjudicate his pending petition for an adjustment of immigration status. Although the ultimate decision to grant or deny Islam's petition is "unquestionably discretionary" and therefore insulated from judicial review, *see Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N. D. Cal. 2007), Islam contends that § 1252(a)(2)(B)(ii) does not similarly preclude him from challenging the *speed* with which defendants process his application.

Although the Ninth Circuit has not addressed the issue, several decisions out of this district have held that § 1252(a)(2)(B)(ii) does not deprive federal courts of subject matter jurisdiction over claims alleging unreasonable delay in processing applications for adjustment of immigration status. *See Islam v. Heinauer*, C 10-04222 JSW, 2011 WL 2066661 (N.D. Cal. May 25, 2011) ("*Islam I*") (citing cases). Indeed, the government has a non-discretionary duty to adjudicate such a petition "within a reasonable period of time." *Beyene v. Napolitano*, C 12-01149 WHA, 2012 WL 2911838 (N.D. Cal. July 13, 2012).[4] "To hold otherwise would be to sanction the perpetual delay of

---

[3] The statute governing adjustment of status of refugees, 8 U.S.C. 1159(b), specifies that the authority to adjust the status of an applicant is within the discretion of the Secretary of the Homeland Security or the Attorney General.

[4] While the authority to adjust immigration status is discretionary, "Section 1159(b) does not commit the pace of doing so to the agency's discretion. Neither Section 1159(b) nor any other statute provides the 'specified' discretionary authority over the pace of adjudicating applications for adjustment of status that Section 1252(a)(2)(B)(ii) requires." *Beyene v. Napolitano*, C 12-01149 WHA, 2012 WL 2911838 (N.D. Cal. July 13, 2012).

governmental obligations that are clearly mandated by law." *Liu v. Chertoff*, C 07-00734 CRB, 2007 WL 2119427 (N.D. Cal. July 23, 2007). Defendants' entreaties to deviate from this trend are unavailing. Accordingly, their motion to dismiss pursuant to Rule 12(b)(1) is denied.

> ii. *Failure to State a Claim*

Defendants also move to dismiss pursuant to Rule 12(b)(6), contending Islam fails to state a claim for relief because the delay in processing inures to his benefit. In particular, defendants assert that while Islam's application remains pending, he enjoys asylee status. In the meantime, Islam also has obtained travel and work authorization documents, and defendants claim that "there is nothing to indicate that if he applied to renew either [set of documents] in the future, his applications would be denied." (Defendants' Motion, ECF No. 13, at 15:21). Moreover, defendants argue that if Islam's petition were adjudicated, it would likely be denied due to his prior involvement in MQM-A. Accordingly, they contend that plaintiff is only benefitting from the delay. Islam, however, sees it differently. Having applied for a status adjustment in May 2008, he has been waiting almost six years for his petition to be processed. In the meantime, he alleges he has been deprived of the numerous advantages conferred by lawful permanent resident status, including the ability to reside and work permanently in the United States, to travel freely outside the United States, and to petition to immigrate close family members. Well-aware that the adjudication of his petition could result in a denial, Islam nonetheless would rather face such a result than continue to endure uncertainty while his application sits "in limbo." (Plaintiff's Motion, ECF No. 17, at 10:1-3).[5]

Numerous courts in this district have rejected the same argument the government makes in its motion. *See Dosouqi v. Heinauaer*, C 12-3946 PJH, 2013 WL 664150 (N.D. Cal. Feb. 22, 2013); *Beyene*, 2012 WL 2911838; *Islam I*, 2011 WL 2066661. As in those cases, the plaintiff here avers he suffers irreparable harm due to defendants' delay in processing his petition. Viewing the allegations in the light most favorable to plaintiff, "it is not only possible—it is plausible—that

---

[5] Islam contends that, if deemed inadmissible on terrorism-related grounds, he could seek judicial review of such a finding.

1    Islam could benefit from a final adjudication on his I–485 Application." *Islam I*, 2011 WL 2066661

2    at *4. Accordingly, he states a viable claim upon which relief could be granted.[6]

        B.   <u>Cross Motions for Summary Judgment</u>

Both parties seek summary adjudication of Islam's pending claims, disputing whether plaintiff has experienced a delay that is, as a matter of law, unreasonable. The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. 706(1). *See Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001). The six factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 1068 (*quoting Telecomms. Research & Action v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984). In *Islam I*, the court applied the *TRAC* factors and concluded that defendants' then-three-year delay was not unreasonable. It noted, however, that it could "foresee a point at which the delay in ruling on Islam's I-485 Application would be unreasonable[.]" 2011 WL 2066661 at *8. Now, three years after losing at summary judgment in *Islam I*, plaintiff contends that such a point has arrived.

        i.   *First Factor: Rule of Reason*

The first *TRAC* factor requires that the time an agency takes to make decisions be governed by a "rule of reason." *See TRAC*, 750 F.2d at 80. Terrorist-related determinations involving immigration applicants are "not made lightly" and "may be time-consuming." *Islam I*, 2011 WL

---

[6] Defendants also argue that Islam fails to aver sufficient facts to support a claim for injunctive relief. This argument, premised on the assumption that Islam cannot identify a plausible theory of irreparable harm in the first place, is unavailing. *See Islam I*, 2010 WL 2429553, at *4.

2066661, at *7. The undisputed evidence indicates that establishing an exemption to inadmissibility requires a deliberative process between multiple government actors:

> In order to exempt the INA's terrorist-related inadmissibility provisions from applying to a category of individuals, or a specific individual, the Secretary of Homeland Security, the Secretary of State, and the Attorney General must consult. Various factors, including national security, humanitarian, and foreign policy concerns, must be weighed carefully before a decision is made. There is much interagency discussion on how best to approach and tailor particular exemptions. The large number of possible exemptions that may be considered, combined with the deliberative nature of the process, causes significant time to pass before adjudications ultimately can take place.

(Canaan Decl. ¶ 19). It is also apparent that this deliberative process is not a sham: between mid-2006 and June 2013, USIC granted a total of 15,808 exemptions in cases involving terrorist related inadmissibility grounds. *Id.* at ¶ 24. Moreover, since June 2010, USCIS released over 3,500 cases from hold. *Id.*

When assessing the first *TRAC* factor for holds on Form I-485 Applications due to findings of terrorist-related inadmissibility, courts focus, in part, on the length of the delay. *See Qureshi v. Napolitano*, C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, C06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (citation and quotation marks omitted). In many of the I-485 terrorism-related delay cases decided in this district, however, the underlying facts are often similar: the plaintiff asylee lodges a Form I-485 application, the USCIS imposes a "hold" pursuant to apparent findings of terrorism-related inadmissibility, and the plaintiff sues to compel adjudication of his or her application, alleging unreasonable delay. Accordingly, when either the asylee plaintiff or the government defendants bring a motion for summary judgment, the length of the delay is often one of the most salient facts for a reviewing court to consider. *See Dosouqi v. Heinauaer*, C 12-3946 PJH, 2013 WL 664150 (N.D. Cal. Feb. 22, 2013) (finding that length of delay was the "dispositive fact" in *Bayene*, *Islam I*, and *Quereshi*).

In this district, courts have generally found delays of four years or less not to be unreasonable. *See Islam I*, 2010 WL 2429553 (point of unreasonableness had "not yet come" after three-year delay); *Sagier v. USCIS*, No. C11-05537 JSC, Order Granting Defendants' Motion for

8

1  Summary Judgment and Denying Plaintiff's Cross Motion (ECF No. 19, 13:12) (four year delay
2  "not yet unreasonable"); *Dousouqi*, 2013 WL 664150 (delay of three and one-half years not
3  unreasonable); *Khan v. Scharfen*, 08-1398 SC, 2009 WL 941574 (N.D. Cal. Apr. 6, 2009) (one-year
4  delay not unreasonable).[7] By contrast, many courts applying the *TRAC* factors have declined to find
5  that delays exceeding six years are reasonable. *See, e.g., Mugomoke v. Curda*, 2:10-CV-02166
6  KJM, 2012 WL 113800 (E.D. Cal. Jan. 13, 2012) ("Although even a nearly seven-year delay on an
7  I–485 application is not *presumptively* unreasonable, defendants have not shown that the delay here
8  is not unreasonable.") (emphasis added); *Ahrary v. Curda*, 2:11-CV-02992-GEB, 2012 WL
9  1641411 (E.D. Cal. May 9, 2012) (defendants failed to show that eleven-year delay was not
10 unreasonable); *Tewolde v. Wiles*, 2012 WL 750542, at * 9 (W. D. Wash. 2012) (denying defendants'
11 motion for summary judgment for a nearly nine-year delay).
12     Here, Islam's application has been pending for five years and ten months. To the extent the
13 aforementioned district court cases establish helpful guideposts for determining when I-485
14 Application delay may or may not be reasonable, Islam's circumstances fall somewhere between
15 these markers. When confronted with delays in the five-year range, courts in this district have come
16 to different conclusions. In *Quereshi*, the court found that a five-year delay was unreasonable where
17 the defendants provided no indication of when the plaintiff could anticipate adjudication of his
18 petition. 2012 WL 2503828 at *5. Accordingly, the court granted the plaintiff's motion for
19 summary judgment and ordered the defendants to adjudicate the plaintiff asylee's application. *Id.* at
20 *8. In *Beyene*, by contrast, the court declined to compel agency action where the plaintiff had been
21 waiting approximately five years and two months.[8] 2012 WL 2911838. The court in *Beyene*
22 emphasized, however, that the plaintiff's case presented a "close call" under the *TRAC* factors. *Id.*

---

[7] In its order granting the defendants' motion for summary judgment, the court in *Dousouqi* did not mention the length of the delay. According to the underlying complaint, the plaintiff in *Dousouqi* experienced a three and one-half year delay between his filing the I-485 petition and the court's summary judgment order. *See* No. C 12-03946-PJH (Complaint ¶ 1, ECF No. 1).

[8] The court in *Beyene* distinguished the petitioner's circumstances from those in *Quereshi*, where the plaintiff's wife and child lived in Pakistan, requiring the plaintiff regularly to travel under a refugee travel document to visit them, fearing for their safety. As in *Beyene*, this record does not reflect the same degree of harm as was present in *Quereshi*. Islam, however, has been waiting longer than the plaintiffs in both cases.

9

at *9. Like the court in *Islam I*, the court in *Beyene* granted defendants' motion for summary judgment while noting that the plaintiff might nonetheless be entitled to relief at some future date:

> "[N]o relief will be granted to plaintiff at this time. Although the government's Rule 56 motion is now granted, this will be without prejudice to a new motion in the future if, for example, the agency has not made a final adjudication within another 12 months."

*Id.* While Islam has waited nearly six years for resolution of his I-485 request, the government has not indicated if or when it will eventually adjudicate his petition. Instead, it states only that Islam's application was placed on hold "to await the possibility future [sic] exemptions that might allow the application to be approved." (Canaan Decl. ¶ 21). Although the government's time-consuming exemption process "requires careful deliberation" and "the coordination of numerous agencies," *Quereshi* at *6, there comes a point where the seemingly indefinite delay of an I-485 petition becomes untethered from any discernable "rule of reason." *See Mugomoke*, 2012 WL 113800, at *7 ("[F]or defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable."). In light of the length of delay and defendants' unwillingness to indicate if or when Islam's petition will be adjudicated, the first *TRAC* factor tips in plaintiff's favor.

### ii. Second Factor: Statutory Scheme

The presence of a statutory scheme—a congressionally-mandated timetable with which Congress expects the agency to proceed—may "supply content" for the "rule of reason" mentioned in the first factor. *See TRAC*, 750 F.2d at 80. Here, there is no congressionally-mandated timetable for adjudicating Form I-485 petitions. It is, however, the "sense of Congress" that an immigration benefit application should be processed within 180 days of the initial filing of the application. 8 U.S.C. 1571(b). While the language of § 1571(b) is not mandatory, it nonetheless suffices to tip the second *TRAC* factor is Islam's favor. *See Beyene*, 2012 WL 2911838, *7; *Wang Yi Chao v. Gonzales*, C07-1562 PVT, 2007 WL 3022548 (N.D. Cal. Oct. 15, 2007).

### iii. Third and Fifth Factors: Health, Human Welfare, and Prejudice

The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay. *Islam I*, 2011 WL 2066661, at *7. There is little question that, to some extent, Islam's welfare is at stake while he

continues to sit in limbo, precluded from pursuing lawful permanent resident status. While defendants acknowledge that the delay may be inconvenient for Islam, they contend this inconvenience pales in comparison to their interest "in complying fully with the congressional mandates of the CAA and the resulting USCIS policy." (ECF No. 13, 21:18-20).[9] As the court noted in *Islam I*, it is clear that "there are important interests at stake for both parties." *Islam I*, 2011 WL 2066661, at *8. Accordingly, in these circumstances, these factors do not weigh heavily in either party's favor. *See id.*; *see also Beyene*, 2012 WL 2911838, at *8 (same); *but see Quereshi*, 2012 WL 2503828, at *6 (finding the third and fifth factors favor the plaintiff) ("[A] generalized concern over national security does not provide sufficient justification to hold [plaintiff's] Application indefinitely.").

                *iv.*       *Fourth Factor: Effect of Expediting Delayed Action*

The fourth factor requires the court to consider the effect of expediting adjudication of Islam's application "on agency action of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants contend that an order requiring adjudication of Islam's application would "intrude upon the discretion Congress has granted" the Secretary to exercise his exemption authority. (ECF No. 13 at 23:23-24). Such an order would, defendants claim, "require Defendants to truncate any consideration of a potential exemption that might benefit Islam[.]" (ECF No. 13 at 24:2-3). This argument seems to assume, however, that Islam seeks an order requiring defendants to expedite their deliberation of whether MQM-A members are entitled to an exemption. *See Sagier*, No. C11-05537 JSC, ECF No. 19 at 12. His request is not so broad in scope. Instead, Islam asks only that defendants, regardless of whether they ultimately invoke an exemption to his apparent inadmissibility, make a decision and process his application. Accordingly, this factor weighs in Islam's favor. *See Quereshi*, 2012 WL 2503828, *7 (rejecting government's argument that ordering adjudication will intrude on the Secretary's discretion) ("The Court is not directing the USCIS *how* to adjudicate, but merely *to* adjudicate.") (emphasis in original); *Sagier*, No. C11-05537 JSC, ECF No. 19 at 13 (fourth factor weighs in the plaintiff's favor); *but see Beyene*, 2012 WL 2911838, at *8 (fourth factor tips in defendants' favor).

---

[9] Defendants further contend that Islam actually benefits from the delay, claiming that if his petition were adjudicated now, his request would be denied, potentially resulting in "harm and hardship." (ECF No. 13, 22:11). As discussed in Section IV-A-ii above, this argument is unavailing.

11

*v.     Sixth Factor: Lurking Impropriety*

Islam does not contend that defendants have acted in bad faith. Accordingly, this factor weighs slightly in defendants' favor. Even so, a court applying the sixth *TRAC* factor "need not find that an agency acted in bad faith to conclude unreasonable delay." *Qureshi*, 2012 WL 2503828, at *7 (citing *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997)).

*vi.     Summary*

Taken together, under the circumstances of this case, the *TRAC* factors support a conclusion that Islam has endured an unreasonable delay in the processing of his Form I-485 petition. In *Islam I,* decided in 2011, the court stated that the time may come when defendants' delay—which was, at that point, still reasonable—would become unreasonable as a matter of law. Now, with Islam's petition pending just shy of six years, and with no indication from defendants of when or whether he can expect any decision in the future, the day prophesied in *Islam I* has arrived. Defendants must process Islam's application.[10]

V.     CONCLUSION

For the foregoing reasons, defendants' motions to dismiss and for summary judgment are denied. Plaintiff's motion for summary judgment is granted. Defendants are hereby ordered to adjudicate Islam's Form I-485 Application forthwith, but in no event later than thirty (30) days from the date of this order.

IT IS SO ORDERED.

Dated: 3/7/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[10] Because Islam prevails on his motion for summary judgment, this order need not address his additional argument that the government is precluded from relitigating his admissibility under applicable federal statutes—an issue he claims was decided by the Immigration Judge during his asylum proceedings. As an initial matter, it is unclear whether this argument is meritorious. *See Islam I*, 2011 WL 2066661, at *6 n. 7 ("On the existing record, the Court concludes that Islam has failed to meet his burden to show that issue preclusion bars consideration of Defendants' arguments regarding Islam's activities with the MQM–A."). To the extent this argument is viable, it would operate to the benefit of plaintiff, who prevails nonetheless.